IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARK ANTHONY MILLER,           )
                               )
        Petitioner,            )
                               )
    v.                         )          1:13CV1019
                               )
FRANK L. PERRY,                )
                               )
        Respondent.            )

**MEMORANDUM ORDER**

The Recommendation of the United States Magistrate Judge was filed with the court in accordance with 28 U.S.C. § 636(b) and, on August 9, 2016, was served on the parties in this action. (Doc. 31.) Petitioner Mark Anthony Miller filed objections to the Recommendation. (Doc. 33; Doc. 33-1.) Petitioner's objections and brief, totaling thirty-six pages, are repetitive and exceed the twenty-page limit provided by this court's Local Rules. See L.R. 72.4(d).

The court has reviewed the portions of the Magistrate Judge's Recommendation to which objection was made and has made a de novo determination, which is in accord with the Magistrate Judge's Recommendation. The court will therefore adopt the Magistrate Judge's Recommendation and grant summary judgment in Respondent's favor.

**I. BACKGROUND**

Miller's petition contests two sets of State convictions, one

from December 10, 1998, and one from June 1, 2000. (Doc. 1.) It is Miller's objection related to his 2000 convictions that the court addresses below.

The essential facts are laid out well in the Recommendation. The essence of the claim is that following an unsuccessful jury trial in 2000, Miller filed a pro se notice of appeal on June 7, 2000. (Doc. 27-6 at 13.) His attorney (now deceased) also filed a notice of appeal on June 12, 2000. (Id. at 14.) Miller requested removal of his trial counsel and the appointment of appellate counsel. (Doc. 12-1 at 4.) Miller's trial counsel moved to withdraw, declared Miller's indigency, and requested appointment of a public defender. But no order was entered on the motion to withdraw or the appointment of appellate counsel. Consequently, the appeal was not prosecuted.

Some nine-plus years later, Miller filed a pro se motion in the trial court on December 21, 2009, seeking the production of the stenographic transcript to revive the appellate process. The motion was denied in January 2010.

Over a year later, on September 29, 2011, North Carolina Prisoner Legal Services wrote a trial judge seeking the appointment of an appellate defender to prosecute the appeal, which was granted in October 2011. By now the trial transcript had been destroyed, so the trial court ordered that a reconstructed summary be prepared.

2

On January 23, 2012, Miller's new counsel filed his record on appeal with the North Carolina Court of Appeals. (Doc. 27-5 at 64.) On January 31, 2012, he filed a petition for writ of certiorari seeking a belated appeal (Doc. 7-4), and on February 2, 2012, he filed his appellate brief (Doc. 27-2). On February 13, 2012, the State of North Carolina moved to dismiss the appeal. (Doc. 7-2; Doc. 7-5.) The court of appeals dismissed Miller's appeal on February 29, 2012 (Doc. 7-7), and denied his certiorari petition on March 6, 2012 (Doc. 7-8). In neither case did the court explain its decision. On August 23, 2012, the North Carolina Supreme Court declined to review the court of appeals' decision. (Doc. 8-2.)

Miller filed his present habeas petition on November 14, 2013. (Doc. 1.) This court granted multiple extensions of time requested by Miller in order to permit him to exhaust his State court remedies. (Docs. 12, 15, 16, 17, 18, 19, 21, 22, and 23.) Once those were exhausted, this proceeding ensued.

## II. ANALYSIS

Among other contentions, Miller now claims the Magistrate Judge erred in concluding that his petition is time-barred under 28 U.S.C. § 2244(d)(1). Section 2244(d)(1) provides that a State prisoner may file a § 2254 petition only within one year of the latest of four dates, one of which is "the date on which the [State-court] judgment became final by the conclusion of direct

3

review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A) (2012). Miller contends that the judgment for his 2000 convictions became final "by the conclusion of direct review" on November 21, 2012, 90 days after the North Carolina Supreme Court refused to review the court of appeals' dismissal. (E.g., Doc. 33 at 4, 14.) On this understanding, Miller argues, his § 2254 petition is timely.

Under North Carolina law, an appellant who fails to perfect his appeal in a timely manner loses his right of appeal by operation of law. The Magistrate Judge properly relied on Woods v. Shelton, 93 N.C. App. 649, 379 S.E.2d 45 (1989), and McGinnis v. McGinnis, 44 N.C. App. 381, 261 S.E.2d 491 (1980), which concluded that appellants lost their rights of appeal by failing to perfect their appeals within the time required by the North Carolina Rules of Appellate Procedure.

At the time of Miller's convictions, the North Carolina Rules of Appellate Procedure required (in non-capital cases) an appellant to settle the record on appeal within 35 days of the reporter's certification of delivery of the trial transcript if it was ordered or, if no transcript was ordered, within 35 days of the filing of the notice of appeal. N.C. R. App. P. 11(a). The rules provided an additional 21 days for the parties to settle the record if it was contested, N.C. R. App. P. 11(b), or an additional period of 10 days if they needed to seek judicial settlement of a

4

disputed record, N.C. R. App. P. 11(c). While these time periods have been amended slightly since 2000,[1] they have remained essentially equivalent. Thus, where no transcript is ordered (as here, even if the failure was merely negligent), an appellant has approximately 8 to 9 weeks to settle his record on appeal and thus perfect the appeal. The record was then required to be filed with the court of appeals within 15 days of settlement, N.C. R. App. P. 12(a), and would thereupon be docketed by the clerk where the appellant was authorized to appeal in forma pauperis, N.C. R. App. P. 12(b).

In Woods, the appellant did nothing to perfect her appeal for 139 days after filing notice of appeal. The court of appeals held that her failure to settle the record within the 60 days then required by Rule 11(a) constituted an abandonment of the appeal and "work[ed] a loss of the right of appeal." Woods, 93 N.C. App. at 653, 379 S.E.2d at 47. Thus, the court dismissed the appeal. Likewise, in McGinnis, the appellant failed to tender a proposed record on appeal within 30 days of the notice of appeal, in violation of the time limit then required by Rule 11(a), nor did he seek an extension under Rule 27(c). Consequently, the court of appeals refused to consider the appeal, holding that the defendant's "purported appeal . . . is not before this Court

---

[1] E.g., Rule 11(b) now extends the time for serving notice of approval of the proposed record on appeal or objections/amendments from 21 to 30 days.

5

because defendant failed [for 88 days], after giving notice of appeal on 1 September 1978, to take any further timely step required by the Rules of Appellate Procedure to perfect his appeal." McGinnis, 44 N.C. App. at 387, 261 S.E.2d at 495. In fact, the court concluded that the failure to perfect the appeal "reinvested the trial court with jurisdiction to render further orders in the cause." Id. at 386, 261 S.E.2d at 495.

The court of appeals reaffirmed Woods and McGinnis in Coffey v. Savers Life Insurance Co., No. COA01-741-2, 2003 WL 1873506 (N.C. Ct. App. Apr. 15, 2003), holding that an appeal "is not properly before this Court [of appeals] if the parties fail to perfect the appeal pursuant to the N.C. Rules of Appellate Procedure." 2003 WL 1873506, at *2 (citing McGinnis, 44 N.C. App. 381, 261 S.E.2d 491).[2] Thus, all three court of appeals cases have held that the failure to timely perfect an appeal according to the North Carolina Rules of Appellate Procedure "results in the loss of the right of appeal" because the appeal is "not properly before [the] Court." Id. at *2.

Here, under North Carolina law, Miller's failure to perfect his appeal to the North Carolina Court of Appeals within the time constraints of Rule 11(a) rendered it a nullity by mid-2000, and

---

[2] The Coffey court distinguished the loss of the right of appeal from formal "abandonment," which "exists only where there is express notice, showing, and judgment of abandonment." Coffey, 2003 WL 1873506, at *1 (quoting Kirby Bldg. Sys., Inc. v. McNiel, 327 N.C. 234, 240, 393 S.E.2d 827, 831 (1990)).

6

his convictions became final contemporaneously.  Miller delayed for more than nine years thereafter before seeking to investigate the status of his appeal.  His habeas petition, filed on November 14, 2013, is therefore far, far out of time.

In his objections, Miller criticizes the Magistrate Judge for relying on Woods and McGinnis because they are civil, not criminal, cases.  (Doc. 33 at 12.)  This criticism is unfounded.  The North Carolina Rules of Appellate Procedure apply to both civil and criminal cases, N.C. R. App. P. 1(b); see also, e.g., McGinnis, 44 N.C. App. at 386, 261 S.E.2d at 494–95 (applying Rule 11 in a civil case); State v. Parker, No. COA11-1525, 2012 WL 1995171, at *1 (N.C. Ct. App. June 5, 2012) (applying the same rule in a criminal case), except when the rules themselves indicate otherwise, see, e.g., N.C. R. App. P. 3 (addressing how and when to take appeal in civil cases); N.C. R. App. P. 4 (addressing the same issue for criminal cases).  Miller himself cites a civil case less than one page after he criticizes the Magistrate Judge for doing the same thing.  (Doc. 33 at 13 (citing McNiel, 327 N.C. at 240, 393 S.E.2d at 831).)

In an attempt to overcome the timeliness bar, Miller argues that his trial convictions became final by "conclusion of direct review" on August 23, 2012, when the North Carolina Supreme Court declined to review the court of appeals' dismissal of his petition.  (Doc. 33 at 13.)  At that point, according to Miller, the appeal

7

was formally "abandoned." But the court of appeals did not issue an opinion explaining why it dismissed Miller's appeal, nor did the North Carolina Supreme Court in declining to review the dismissal. Based on Woods, McGinnis, and Coffey, however, it is clear that under North Carolina law, Miller lost his right of appeal by operation of law years before the court of appeals issued its judgment. Cf. Thomas v. Goodwin, 786 F.3d 395, 398-99 (5th Cir. 2015) (finding that AEDPA one-year limitations period began to run at the expiration of the time for seeking State appellate review and not when the State appellate court later refused review); Butler v. Cain, 533 F.3d 314, 318 (5th Cir. 2008) (finding AEDPA one-year limitations period began to run when the time for filing a writ application expired and not when the Louisiana Supreme Court denied the application in a one-word denial five months later).

Moreover, accepting Miller's argument would lead to illogical results. If a State court's subsequent rejection of an untimely appeal constitutes "the conclusion of direct review," any State prisoner who is derelict in prosecuting his appeal could successfully evade § 2244's timeliness requirements for years simply by filing a belated direct appeal. Under Miller's theory, an appellant could do this repetitively, with each appeal resetting the clock for § 2244(d)(1). Construing the phrase "conclusion of direct review or the expiration of the time for seeking such

8

review" to include conclusion by operation of law prevents petitioners from circumventing § 2244's timeliness requirements. This construction also gives effect to North Carolina law and affords its judicial system respect.

Miller argues that this construction violates <u>Jiminez v. Quarterman</u>, 555 U.S. 113 (2009). This is incorrect. There, the Supreme Court, in a self-described "narrow" decision, held that a State court judgment that became final based on delay was no longer "final" for purposes of § 2244(d)(1)(A) where the State appellate court expressly granted the defendant the right to file an out-of-time direct appeal. <u>Id.</u> at 121. Here, Miller sought such a right but was denied. (Doc. 7-8.) Thus, Miller's State conviction remained final and his situation does not fall within <u>Jiminez</u>'s "narrow" holding. 555 U.S. at 121.

Therefore, Miller's loss of his right of appeal constituted "the conclusion of direct review or the expiration of the time for seeking such review" for § 2244's purposes. Because the loss occurred years before Miller filed his § 2254 petition, the petition is untimely.

In response to the foregoing, Miller argues that the reason he lost his right of appeal was that his trial counsel was constitutionally deficient for failing to perfect the appeal. (<u>E.g.</u>, Doc. 33 at 8, 12.) But there are legal and factual bars to this claim.

9

Most importantly, Miller raised his ineffective assistance of counsel claims in his State court Motion for Appropriate Relief ("MAR") proceeding. The State trial court rejected the claims Miller now raises on several grounds, including the fact that they were subject to summary dismissal for Miller's failure to support the MAR petition with proper factual and documentary evidence in violation of N.C. Gen. Stat. § 15A-1420(b)(1). (Doc. 27-4 at 4.) Moreover, the court rejected Miller's ineffective assistance claim relating to the 2000 convictions specifically as being both procedurally barred and meritless based on Miller's failure to act for years. (Id. at 5.) Finally, the court found that, even if counsel were constitutionally deficient, Miller failed to demonstrate prejudice. (Id.) Lee v. Clarke, 781 F.3d 114, 122 (4th Cir. 2015) (to show prejudice, a petitioner "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' A reasonable probability is one 'sufficient to undermine confidence in the outcome.'" (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984))).

In challenging the MAR decision (as the last merits-based decision on appeal), Ylst v. Nunnemaker, 501 U.S. 797, 805 (1991) (holding that the federal habeas court looks to the last explained state court judgment), Miller must show that it is contrary to or an unreasonable application of federal law or an unreasonable

10

determination of the facts under 18 U.S.C. § 2254(d). Miller has done neither here.[3]

---

[3] Miller argues that his trial counsel was obliged to prosecute the appeal of his 2000 convictions until excused by the court, evidenced by his motion "to withdraw as appellate counsel," and citing N. C. Rule of Professional Conduct 1.16(b)(1) as well as State v. Crump, 277 N.C. 573, 591, 178 S.E.2d 366, 377 (1971), and Smith v. Bryant, 264 N.C. 208, 211-12, 141 S.E.2d 303 (1965). (Doc. 29 at 2; Doc. 33 at 8.) Miller's briefing is less than candid.

North Carolina Rule of Professional Conduct 1.16(b)(1) provides merely that a lawyer may withdraw if doing so will not cause any material adverse effect on the client's interests. Rule 1.16(c), which appears more pertinent, requires a lawyer to "comply with applicable law requiring notice to or permission of a tribunal when terminating a representation." In this regard, Miller notably does not address N.C. Gen. Stat. § 15A-143 (1999), part of the North Carolina Criminal Procedure Act, which provides that "[a]n attorney who enters a criminal proceeding . . . undertakes to represent the defendant . . . until entry of final judgment, at the trial stage." N.C.G.S. § 15A-143 (1999) (emphasis added). Miller's trial counsel did this, and even filed a protective notice of appeal. Miller himself filed his own notice of appeal and acknowledges that he asked that his trial lawyer (who the Judgment and Commitment reflect was retained, not appointed (see Doc. 7 at 28, 34)) be removed from his case for the appeal. (Doc. 12-1 at 4.) Moreover, there is no evidence that trial counsel had been retained to handle any appeal. In addition, Crump and Smith involved very different scenarios - a lawyer who sought to terminate his representation during trial, not as to any subsequent appeal - and the court emphasized a lawyer's independent obligation to the tribunal until the end of the case. Here, the evidence indicates that trial counsel discharged his obligation to the trial court through judgment.

Miller also argues that after the trial ended, his trial counsel led him to believe that he was working on his appeal. (Doc. 33 at 9-10.) The record contains testimony that on a few occasions the lawyer told Miller and his sister that Miller was "going to get an appeal" (Doc. 27-3 at 14-15), but there is no other evidence of communication from the lawyer. Indeed, the thrust of Miller's complaint is counsel's alleged failure of any communication. This limited statement under the facts alleged, if true, is far from any representation that the trial counsel himself would handle Miller's appeal. Rather, it is just as likely an indication of the fact that counsel had filed a notice of appeal and that the public defender would provide an attorney for him, as had occurred after Miller's 1998 convictions. (Doc. 5 at 20.)

11

**III. CONCLUSION**

For the reasons stated, therefore,

IT IS ORDERED that Respondent's motion for summary judgment (Doc. 26) is GRANTED, that the Petition (Doc. 1) is DISMISSED, and that Judgment be entered dismissing this action.

A judgment dismissing this action will be entered contemporaneously with this Order.

Finding neither a substantial issue for appeal concerning the denial of a constitutional right affecting the conviction nor a debatable procedural ruling, a certificate of appealability is not issued.

                                          /s/   Thomas D. Schroeder
                                     United States District Judge

September 30, 2016